# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| CHIARO TECHNOLOGY LIMITED (in Administration),[1] | Case No. 25-10691 (BLS) |
| Debtor in a Foreign Proceeding. | |

## VERIFIED PETITION FOR RECOGNITION AND RELATED RELIEF

Lindsay Hallam, Matthew Boyd Callaghan, and Oliver Wright of FTI Consulting LLP, in their capacity as the duly authorized joint administrators (the "Foreign Representatives") of Chiaro Technology Limited (in Administration) (the "Foreign Debtor"), a debtor in administration under English law (the "English Proceeding") under the Insolvency Act 1986 (the "Insolvency Act"), sealed and endorsed by the High Court of Justice, Business and Property Courts in Leeds, Insolvency and Companies List (the "English Court"), submit this Verified Petition (together with the Official Form 401 Petition, the "Petition"), the *Motion of the Foreign Representatives for Recognition and Related Relief* (the "Recognition Motion"), the *Memorandum of Law in Support of Motion of the Foreign Representatives for Recognition and Related Relief* (the "Recognition Memorandum"), the *Declaration of James Davison Regarding Foreign Law in Support of the Verified Petition for Recognition and Related Relief* (the "Davison Declaration"), and the *Declaration of Lindsay Hallam in Support of the Verified Petition for Recognition and Related Relief* (the "Hallam Declaration"), for entry of an order under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"):

---

[1] The Foreign Debtor's mailing address and principal place of business is 1 Brunswick Square, Bristol BS2 8PE, England.

(i) Recognizing the Foreign Representatives as the Foreign Debtor's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code;

(ii) Recognizing the English Proceeding as a "foreign main proceeding" in accordance with sections 101(23), 1502(4), and 1517(a) and (b)(1) of the Bankruptcy Code, or, in the alternative, as a "foreign non-main proceeding" under section 1502(4) and 1517(b)(2) of the Bankruptcy Code;

(iii) Granting all relief provided by section 1520 of the Bankruptcy Code, upon recognition of the English Proceeding as a foreign main proceeding, including without limitation, imposing the automatic stay of section 362 of the Bankruptcy Code in favor of the Foreign Debtor and any of its property within the territorial jurisdiction of the United States throughout the duration of this chapter 15 case or until otherwise ordered by this Court;

(iv) Granting the Foreign Representatives the rights and protections to which they are entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of the courts of the United States over the Foreign Representatives in accordance with sections 306 and 1510 of the Bankruptcy Code; and

(v) Granting such other relief as may be necessary and appropriate, including entry of a final decree after entry of the order granting the relief requested.

## PRELIMINARY STATEMENT[2]

1. The Foreign Representatives have commenced this chapter 15 case to aid the English Proceeding and obtain a stay in the United States of all pending litigation and collection and enforcement actions against the Foreign Debtor and its assets. Specifically, the Foreign Debtor is a named party in active intellectual property litigation before the United States District Courts for the Western District of Washington and the Eastern District of Texas.[3]

2. As described in the Davison Declaration, the English Proceeding imposes a moratorium on actions against the Foreign Debtor or its assets. Davison Decl. ¶ 7. This Court's recognition of the English Proceeding as a foreign main proceeding will result in the application

---

[2] Capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

[3] Due to upcoming deadlines in the Washington litigation, the Foreign Debtor has also submitted the *Motion of the Foreign Representatives for Provisional Relief under Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion").

2

of the automatic stay under section 362 of the Bankruptcy Code, which will ensure that the plaintiffs in the US Litigation and the courts presiding over them acknowledge the moratorium imposed under English law and will further assist the Foreign Representatives in their administration of the English Proceeding.

3. Recognition of the English Proceeding is fundamental to preserving the Foreign Debtor's assets and mitigating costs and claims to the Foreign Debtor. Recognition will also facilitate the centralized administration of the Foreign Debtor's assets by permitting coordination between this Court and the English Court as necessary to maximize the value of the Foreign Debtor's assets in the United States. Absent recognition of the English Proceeding, the US Litigation and other potential creditor enforcement actions threaten to undercut the equal treatment of creditors, diminish the value of the Foreign Debtor and its assets, and undermine the Foreign Representatives' administration of the English Proceeding, all of which would likely result in diminished recoveries to the Foreign Debtor's creditors, who are based in Europe, Asia and the United States.

4. The Foreign Representatives respectfully submit that the English Proceeding should be recognized by this Court as a "foreign main proceeding" under section 1517(b)(1) of the Bankruptcy Code, or, in the alternative, as a "foreign non-main proceeding" under section 1517(b)(2) of the Bankruptcy Code.

5. *First*, the Foreign Representatives are "person[s]," as contemplated in subsections 101(24) and 101(41) of the Bankruptcy Code and were duly appointed as the joint administrators of the Foreign Debtor.

6. *Second*, the English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code because the English Proceeding constitutes a collective

judicial proceeding conducted in England under English law related to insolvency or debt adjustment (*i.e.*, the Insolvency Act), which establishes a comprehensive framework determining how the Foreign Debtor's assets will be administered, retrieved and distributed. Additionally, the English Proceeding is a "foreign main proceeding" because section 1516(c) of the Bankruptcy Code presumes that the Foreign Debtor's center of main interests is in England. The Foreign Debtor is entitled to that presumption because it is registered in England and has always maintained registered offices in England, where the English Proceeding is taking place. There is no reason to rebut that presumption because, among other facts, the Foreign Debtor was founded in England, has its main business operations in England, and operated under the direction of management located in England.

7.      *Third*, the Petition complies with section 1515 of the Bankruptcy Code. Specifically, as required by section 1515(b) of the Bankruptcy Code, the Petition is accompanied by copies, in English, of the documents evidencing the appointment of the Foreign Representatives as joint administrators of the Foreign Debtor and commencing the English Proceeding. Additionally, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representatives filed a statement identifying the English Proceeding as the only foreign proceeding concerning the Foreign Debtor. Further, as required by section 1515(d) of the Bankruptcy Code, all documents submitted in satisfaction of the requirements of section 1515(b) of the Bankruptcy Code are in English. Finally, as required by rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Foreign Representatives filed a statement identifying all pending litigation in the United States.

8. In sum, all of the conditions to entry of an order recognizing the English Proceeding as a foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code have been satisfied.

9. In the alternative, because the Foreign Debtor has maintained non-transitory activity in England, the Court should recognize the English Proceeding as a "foreign non-main proceeding." As noted above, the Foreign Debtor is registered under English law, has always maintained registered offices in England, and has always conducted business in England. The Foreign Debtor therefore has an "establishment" in England and the English Proceeding is entitled to recognition as a foreign non-main proceeding if the Court does not recognize the English Proceeding as a foreign main proceeding.

10. Recognition of the English Proceeding under chapter 15 of the Bankruptcy Code will serve the exact purpose of its enactment by ensuring that the English Proceeding continues in a fair, efficient, uninterrupted, and centralized manner with the goal of maximizing the value of the Foreign Debtor's assets for the benefit of all stakeholders. Accordingly, this Court should enter an Order recognizing the English Proceeding as a foreign main proceeding.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this case under sections 157 and 1334 of title 28 of the United States Code and the *Amended* Standing *Order of Reference* of the United States District Court for the District of Delaware (Sleet, C.J.), dated February 29, 2012.

12. The Foreign Representatives have properly commenced this case under sections 1504 and 1515 of the Bankruptcy Code. This is a core proceeding under section 157(b)(2)(P) of title 28 of the United States Code.

13. Venue for this case is proper under 28 U.S.C. § 1410(1) because the Foreign Debtor has its principal assets in this district through (i) its 100% ownership interest in Chiaro USA, Inc.,

a Delaware corporation, and (ii) its continuing interest in a retainer on deposit in a trust account for the Wilmington, Delaware office of DLA Piper LLP (US).  The Foreign Representatives further submit that venue in this District is consistent with the interests of justice and the convenience of the parties as provided by 28 U.S.C. § 1410 (3).

14. The statutory bases for the relief requested are sections 101(23)-(24), 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1512, 1515, 1516, 1517, 1520, 1521, 1522, and 1524 of the Bankruptcy Code.

**BACKGROUND**

**I.     The Foreign Debtor's formation, management and corporate structure**

15. The Foreign Debtor was incorporated under English law on April 24, 2013, as a private limited company with share capital.  The Foreign Debtor's Companies House registration number is 08502405 and its registered office is at 1 Brunswick Square, Bristol, BS2 8PE, England.

16. The Foreign Debtor is governed by a Memorandum and Articles of Association adopted on March 21, 2024.  Prior to the appointment of the Foreign Representatives, the Foreign Debtor was controlled by Seth James Johnson, Dr. Simon Paul King and Karim Abdel-Ghaffar Plaza (the "Directors").

17. The total number of outstanding shares in the Foreign Debtor is 57,178,750, comprising seven classes of ordinary shares.  The Foreign Debtor has two wholly-owned subsidiaries: Chiaro USA, Inc., a Delaware corporation ("Chiaro USA") and Chiaro Europe BV, a Dutch private limited liability company ("Chiaro Europe").  Chiaro USA was primarily responsible for the Foreign Debtor's sales and marketing operations in the United States and will be wound down and dissolved.  Chiaro Europe is a non-trading entity and will be dissolved.

**II.     The Foreign Debtor's operations and events leading to the English Proceeding**

18.     The Foreign Debtor was founded in 2013 by women's health expert Tania Boler and gained recognition for producing innovative "fem-tech" products, including app-controlled, silent, wearable breast pumps and smart pelvic floor trainers sold under the trade name "Elvie." Following the launch of its first wearable breast pump in 2021, the Foreign Debtor quickly became a market leader in fem-tech, winning hundreds of awards and raising over $100 million from prominent investors.  The Foreign Debtor has sold more than one million breast pumps and was a leading producer of other fem-tech products.

19.     Historically, the Foreign Debtor reinvested a substantial portion of its revenues in research and development and new product launches.  The Foreign Debtor achieved rapid revenue growth until 2022.  Thereafter, due to macroeconomic factors, increased competition, and delays to product launches, the Foreign Debtor's performance began to decline significantly.  Between 2022 and 2023, the Foreign Debtor's revenue declined by 43% from £77.8 million to £44.3 million.  Despite efforts to reduce costs, the Foreign Debtor's losses continued to grow.

20.     The Foreign Debtor's success also created intense market competition and copycat producers, and the Foreign Debtor became engaged in numerous intellectual property disputes, including the US Litigation (as defined below).

21.     As the Foreign Debtor's liquidity position became constrained, the Directors approached the Foreign Debtor's shareholder base for further investment, however, that was not available.  As a result, in 2024 the Foreign Debtor breached several covenants under its Revolving Loan Agreement (as defined below).  On December 16, 2024, the Foreign Debtor engaged FTI Consulting LLP ("FTI") to support its liquidity management and start preparations for an accelerated merger and acquisition process.

22. FTI initially approached select financial parties in the market who may be interested in purchasing some or all of the Foreign Debtor's business and assets. Hallam Decl., ¶ 4. FTI established a competitive sale process by which interested parties signed non-disclosure agreements, were provided access to a data room containing information regarding the Foreign Debtor, and asked to submit non-binding letters of intent ("LOIs") by January 31, 2025. *Id*. Upon that deadline, two parties submitted LOIs. At the instruction of the Directors, following the failure to identify a viable solvent sale transaction, FTI expanded the list of interested parties to include trade buyers and established a deadline of February 19, 2025 for interested parties to submit LOIs. *Id*. Upon the February deadline, the Foreign Debtor received two LOIs, one for the purchase of certain intellectual property and inventory, and the second from Willow Blossom Holdco Limited (together with its affiliates, "Willow"), an affiliate of the Foreign Debtor's primary competitor in the United States, which proposed to purchase substantially all of the Foreign Debtor's assets. *Id*. The Foreign Debtor and FTI determined that the offer from Willow represented the highest or otherwise best offer for the Foreign Debtor's creditors, and proceeded to engage in extensive, arm's length negotiations regarding the terms of a sale transaction. *Id*.

23. On March 27, 2025, the Directors passed written resolutions agreeing to appoint the Foreign Representatives as joint administrators of the Foreign Debtor (the "Resolutions"). On the same day, the notice of intention to appoint administrators (sworn by a director of the Foreign Debtor) was sealed and endorsed by the English Court and served on the relevant parties. On March 28, 2025 (the "Administration Date"), the English Court sealed and endorsed the notice of appointment of the Foreign Representatives as joint administrators of the Foreign Debtor (together with the Resolutions, the "Appointment Documents") and the Foreign Debtor was placed into administration by the English Court. The Foreign Representatives immediately entered into that

8

certain Business and Asset Sale Agreement (the "Purchase Agreement") by and among the Foreign Debtor, the Foreign Representatives (in their capacity as joint administrators of the Foreign Debtor) and Willow, under which the Foreign Debtor agreed to sell and Willow agreed to purchase substantially all of the Foreign Debtor's assets (except certain excluded assets, including the US Litigation) for a purchase price of approximately £6.1 million. *Id.* at ¶ 18.

### III. The Foreign Debtor's capital structure

#### A. HSBC revolving loan facility

24. On December 21, 2022, the Foreign Debtor entered into a loan agreement (the "Revolving Loan Agreement") with HSBC UK Bank PLC (together with its affiliates, "HSBC") that provides for a revolving loan facility in the maximum principal amount of £12 million. As security for its obligations under the Revolving Loan Agreement, the Foreign Debtor granted HSBC a first-priority security interest in substantially all of its assets, subject to certain permitted liens. As of the Administration Date, approximately £8.0 million remained outstanding under the Revolving Loan Agreement.

#### B. HSBC trade loan facility

25. On December 16, 2022, the Foreign Debtor entered into a trade loan facility agreement (the "Trade Loan Agreement") with HSBC in the maximum principal amount of £7 million. The Trade Loan Agreement was secured by the same collateral pool as the Revolving Loan Agreement. As of the Administration Date, approximately $3.7 million remained outstanding under the Trade Loan Agreement.

#### C. HSBC invoice financing

26. On September 6, 2021, the Foreign Debtor entered into a debt purchase agreement with HSBC Invoice Finance (UK) Limited (the "Invoice Financing Agreement") that provides

invoice financing to the Foreign Debtor.  As of the Administration Date, approximately £80,000 remained outstanding under the Invoice Financing Agreement.

### D. Warehousing agreement and subordination agreement

27. Under the terms of a warehousing agreement with SEKO Worldwide, LLC ("SEKO"), the Foreign Debtor maintained inventory (the "US Inventory") in storage facilities in Antioch, Tennessee to fulfil sales in the United States (the "Warehousing Agreement").  On August 30, 2023, SEKO entered into a subordination agreement with HSBC that subordinates SEKO's security interest in the US Inventory to HSBC's, provided that SEKO can maintain a limited lien permitting it to detain (but not sell) an amount of the Inventory equal to the amount of outstanding unpaid warehousing fees.  The US Inventory was sold to Willow under the Purchase Agreement.  The assets transferred under the Purchase Agreement, including the US Inventory, were sold on an "as-is, where-is" basis, subject to all faults, liens, executions, distraints, encumbrances, detentions or other claims of third parties.

### E. Letter of credit and trade creditors

28. The Foreign Debtor also arranged for a letter of credit (the "Letter of Credit") to be issued by HSBC to one of its critical suppliers.  That creditor has since claimed the full amount of the Letter of Credit, resulting in an additional claim against the Foreign Debtor by HSBC in the amount of the Letter of Credit.  As of the Administration Date, approximately £19.1 million was due and owing to unsecured trade creditors.

## IV. Commencement of the English Proceeding

29. As noted above, the Foreign Representatives were appointed as joint administrators of the Foreign Debtor on March 28, 2025.  Immediately after their appointment, the Foreign Representatives entered into the Purchase Agreement.  Since then, the Foreign Representatives have (i) facilitated the transfer of assets to Willow under the terms of the Purchase Agreement, (ii)

engaged in negotiations with landlords in England with respect to the Foreign Debtor's lease holdings, and (iii) commenced a process to realize and liquidate all remaining assets of the Foreign Debtor. Hallam Decl., ¶ 19. The Foreign Representatives are also actively evaluating options with respect to the US Litigation, including either the withdrawal or sale of the Foreign Debtor's claims.

30.     To efficiently carry out their duties and preserve the Foreign Debtor's assets for the benefit of creditors, the Foreign Representatives require a pause in the US Litigation.

**V.     The US Litigation**

31.     The Foreign Debtor is engaged in two active litigation cases in the United States (together, the "US Litigation"):

**A.     *Shenzhen Root Tech. Co., Ltd. et al. v. Chiaro Tech., Ltd.*, 2:23-cv-00631 (W.D. Wash.)**

32.     In 2023, the Foreign Debtor successfully secured the delisting of Shenzhen Root Technology Company, Ltd.'s ("Momcozy") breast pumps from Amazon in the United States through Amazon's neutral patent infringement evaluation program known as "APEX". In response, on April 28, 2023, Momcozy filed a claim against the Foreign Debtor in the United States District Court for the Western District of Washington seeking (a) a declaration that Momcozy's wearable breast pumps do not infringe the Foreign Debtor's patent; (b) a declaration that a separate patent of the Foreign Debtor is invalid; and (c) damages for disruption to Momcozy's business caused by the Foreign Debtor's having caused the delisting of Momcozy's breast pumps from Amazon in the United States. The Foreign Debtor filed counterclaims asserting that various Momcozy products infringe on the Foreign Debtor's patents. The case is currently in discovery with numerous upcoming filing deadlines and hearings, as further described in the Provisional Relief Motion. A trial is anticipated to take place in 2026.

B.       *Willow Innovations, Inc. v. Chiaro Tech., Ltd.*, 2:23-CV-00229 (E.D. Tex.)

33.      On 24 May 2023, an affiliate of Willow, Willow Innovations, Inc. ("Willow Innovations") filed a claim against the Foreign Debtor in the Eastern District of Texas asserting that one of the Foreign Debtor's breast pump models infringes on certain of Willow's patents. The Foreign Debtor counterclaimed that Willow Innovations' breast pump infringes certain of the Foreign Debtor's patents and that Willow Innovations' asserted patents are invalid. Both parties have also brought ancillary claims, including trade dress infringement, false advertising and unfair competition. Trial was originally scheduled to take place in Q1 of 2025 but was adjourned by agreement among the parties to explore settlement in connection with the ongoing solvent merger discussions. The Foreign Representatives understand that Willow does not intend to withdraw the litigation despite consummation of the Purchase Agreement.

## BASIS FOR RELIEF

34.      For the reasons more fully set forth in the Recognition Memorandum, the Foreign Representatives meet the standards and satisfy the statutory requirements for obtaining the relief requested in the Recognition Motion.

35.      The Foreign Representatives respectfully submit that the Court should recognize the English Proceeding because, as required under section 1517 of the Bankruptcy Code, the Foreign Representatives applying for recognition are "persons," the English Proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, and the Petition meets the requirements of section 1515 of the Bankruptcy Code.

36.      Section 1517(a) of the Bankruptcy Code authorizes the Court to enter a final order, after notice and a hearing, recognizing a foreign proceeding if (i) such proceeding is a foreign main proceeding or a foreign non-main proceeding, (ii) the foreign representative applying for recognition is a person or body and (iii) the application for recognition was properly filed in

accordance with section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a). Section 1517(b) of the Bankruptcy Code further provides that a court *shall* recognize a proceeding as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests. *See* 11 U.S.C. § 1517(a) (emphasis added).

37. The Foreign Representatives are "person[s]" within the meaning of section 101(41) of the Bankruptcy Code that have been duly appointed as joint administrators of the Foreign Debtor in accordance with English law, as memorialized in the Appointment Documents. *See* 11 U.S.C. § 1504. The English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code because, among other reasons, the English Proceeding is a collective judicial proceeding conducted in England under the law related to insolvency or debt adjustment (*i.e.*, the Insolvency Act), which establishes a comprehensive framework determining how the Foreign Debtor's assets will be administered, retrieved and distributed.

38. Further, as required by section 1515(b) of the Bankruptcy Code, the Petition is accompanied by copies of the Appointment Documents appointing the Foreign Representatives as joint administrators of the Foreign Debtor and commencing the English Proceeding. *See* Petition [D.I. 1], Ex. A. The Appointment Documents are in English and thus comport with section 1515(d) of the Bankruptcy Code. *Id*. In accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representatives have filed a statement disclosing that, to the best of their knowledge, there are no other foreign proceedings pending with respect to the Foreign Debtor. The Foreign Representatives have, therefore, satisfied the conditions requiring entry of an order recognizing the English Proceeding. *See* 11 U.S.C. § 1517(a). Furthermore, recognition of the English Proceeding is not manifestly contrary to the public policy of the United States. Having satisfied

the requirements of sections 1515 and 1517 of the Bankruptcy Code, the Foreign Representatives petition the Court for entry of an order recognizing the English Proceeding.

39. The Court should specifically recognize the English Proceeding as a foreign main proceeding because the Foreign Debtor's center of main interests is in England. The Foreign Debtor was formed under English law and has always maintained its registered office and headquarters in England; therefore, England is presumed to be the Foreign Debtor's center of main interests. *See* 11 U.S.C. § 1516(c). Further, since the Administration Date, the Foreign Representatives have administered the affairs of the Foreign Debtor from England, under and in accordance with English law. Therefore, since England is the center of main interests for the Foreign Debtor, the Court should recognize the English Proceeding as a foreign main proceeding. *Id*. § 1517(b)(1).

40. In the alternative, because the Foreign Debtor has maintained non-transitory activity in England, the Court should recognize the English Proceeding as a "foreign non-main proceeding." As noted above, the Foreign Debtor was formed under English law and has always maintained registered offices in England. In addition, throughout its existence, the Foreign Debtor has engaged in business activities in England and with English counterparties.

41. Upon recognition of the English Proceeding as a foreign main proceeding, final relief is authorized by sections 1520 and 1521 of the Bankruptcy Code. In particular, upon recognition of the English Proceeding as a foreign main proceeding:

(i) the Foreign Debtor is automatically entitled to the protections of the automatic stay under section 362 of the Bankruptcy Code. 11 U.S.C. §§ 1520(a)(1) and 362.

(ii) sections 363, 549 and 552 of the Bankruptcy Code apply to a transfer of an interest of the Foreign Debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of the estate. 11 U.S.C. § 1520(a)(2).

(iii) the Foreign Representatives may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552 of the Bankruptcy Code, unless the Court orders otherwise. 11 U.S.C. § 1520(a)(3).[4]

(iv) the Court may suspend the right to transfer, encumber or otherwise dispose of the Foreign Debtor's assets. 11 U.S.C. § 1520(a).

(v) the Court may, at the request of the Foreign Representatives, grant any additional relief that may be available to a trustee (except for the relief available under sections 522, 544, 545, 547, 548, 550 and 724(a)).

42. In the alternative, because the Foreign Debtor maintained an establishment in England, the Court should recognize the English Proceeding as a "foreign non-main proceeding." "Establishment" is defined in chapter 15 of the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(5). As noted above, the Foreign Debtor was formed under English law and has always maintained its registered office and conducted business in England.

43. Upon recognition of either a foreign main or non-main proceeding, the Court has the power to provide additional assistance to a foreign representative under the Bankruptcy Code or other laws of the United States, consistent with the principles of comity. *See* 11 U.S.C. §§ 1507 and 1521. The Court's entry of the relief requested in the Recognition Motion and any additional assistance requested will not prohibit just treatment of holders of claims against the Foreign Debtor's property and will not prejudice its creditors.

---

[4] In the alternative, the Foreign Representatives are entrusted, if not under section 1520 of the Bankruptcy Code, then with the Court's approval under section 1521 of the Bankruptcy Code, with the right to exercise the rights and powers of a trustee, and are entitled to administer and realize all or part of the Foreign Debtor's assets within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1521(a)(5).

15

## **CONCLUSION**

**WHEREFORE**, Lindsay Hallam, Matthew Boyd Callaghan, and Oliver Wright of FTI Consulting LLP, in their capacity as the joint administrators of Chiaro Technology Limited (in Administration), respectfully petition this Court for recognition and relief under chapter 15 of the Bankruptcy Code.

Dated: April 11, 2025
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**
*/s/ R. Craig Martin*
R. Craig Martin (DE 5032)
Roxanne M. Eastes (DE 6654)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email: craig.martin@us.dlapiper.com
roxanne.eastes@us.dlapiper.com

- and -

Erik F. Stier (*pro hac vice* forthcoming)
500 Eighth Street, N.W.
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000
Email: erik.stier@us.dlapiper.com

*Counsel to the Foreign Debtor*

## VERIFICATION

I, Lindsay Hallam, declare under penalty of perjury under 28 U.S.C. § 1746 that I am authorized to make this verification in my capacity as one of the duly appointed joint administrators of Chiaro Technology Limited (in Administration), and that based upon reasonable and good faith investigations, and the knowledge and information known to me to date, the facts set forth in the *Verified Petition for Recognition and Related Relief* are true and correct to the best of my knowledge, information, and belief.

Executed on April 11, 2025

London, England

*/s/ Lindsay Hallam*
Lindsay Hallam
solely in her capacity as Joint Administrator of Chiaro Technology Limited (in Administration)